<p style="text-align:center; color:red">Corrected</p>

# In the United States Court of Federal Claims

<div style="text-align:center">

No. 24-1227C

(Filed Under Seal: March 10, 2025)

(Reissued: April 30, 2025)*

**FOR PUBLICATION**

</div>

```
*****************************************
22ND CENTURY                        *
TECHNOLOGIES, INC.,                 *
                                    *
               Plaintiff,           *
                                    *
v.                                  *
                                    *
THE UNITED STATES,                  *
                                    *
               Defendant,           *
                                    *
          and                       *
                                    *
ECS FEDERAL, LLC,                   *
                                    *
     Defendant-Intervenor,          *
                                    *
          and                       *
                                    *
CUSTOMER VALUE PARTNERS, LLC,       *
                                    *
     Defendant-Intervenor.          *
                                    *
*****************************************
```

*Walter Brad English*, Maynard Nexsen PC, Huntsville, AL, for Plaintiff. With him on the briefs were *Emily J. Chancey*, *Taylor R. Holt*, *Michael R. Pillsbury*, and *Hunter M. Drake*, Maynard Nexsen PC, Huntsville, AL.

*Collin T. Mathias*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant, United States. With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Steven J. Gillingham*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., as well as *William B. Blake*,

Senior Attorney-Advisor, Department of Interior, Division of General Law, Branch of Acquisitions and Intellectual Property, Washington, D.C.

*Seth H. Locke*, Wilmer Cutler Pickering Hale & Dorr LLP, Washington, D.C., for Defendant-Intervenor, ECS Federal, LLC. With him on the briefs was *Julia M. Fox*, Perkins Coie LLP, Washington, D.C.

*Milton C. Johns*, Executive Law Partners, PLLC, Fairfax, VA, for Defendant-Intervenor, Customer Value Partners, LLC.

## OPINION AND ORDER

Plaintiff 22nd Century Technologies, Inc. brings this post-award bid protest challenging a decision by the Department of the Interior ("the Agency"), acting on behalf of the National Institutes of Health, not to include it in a set of blanket purchase agreements for information technology ("IT") services. Compl. at 31 (ECF 1); Am. Compl. at 17 (ECF 38); *see* Administrative Record 14 ("AR"). Plaintiff argues that the Agency's review of two aspects of its proposal was arbitrary and capricious. Am. Compl. at 8–14. The parties have filed cross-motions for judgment on the administrative record, and I have heard oral argument.[1] For the reasons discussed below, Plaintiff's motion is **GRANTED**, and Defendant's motion is **DENIED**. The matter is **REMANDED** to the Agency, and the Agency is **ENJOINED** as described below.

## BACKGROUND

### I.   The Solicitation

The Agency issued a solicitation, No. 140D0424Q0045, requesting proposals to perform IT services pursuant to blanket purchase agreements. AR 302 (third solicitation amendment). Recipients of blanket purchase agreements would have the opportunity to compete for assignment of task orders. *See* AR 302–03; Federal Acquisition Regulation ("FAR") § 8.405-3 (codified at 48 C.F.R. § 8.405-3). The solicitation contemplated between four and eight awards, but the Agency reserved the right to select more or fewer awardees. AR 302–03, 311.

---

\* Pursuant to the protective order in this case, the Court initially filed this opinion under seal on March 10, 2025, for the parties to propose redactions of confidential or proprietary information. The parties were directed to propose redactions by April 9, 2025. Plaintiff and Defendant submitted proposed redactions and supporting memoranda. No proposed redactions were received from the Defendant-Intervenors. Plaintiff consents to the redactions proposed by the Defendant. The Court proposed additional redactions, which the parties have approved. The Court has incorporated all redactions, and makes them with bracketed ellipses ("[. . .]" below.

[1] Pl.'s Mot. for J. on the Admin. R. ("Pl.'s MJAR") (ECF 39); Def.'s Cross-Mot. for J. on the Admin. R. & Opp. ("Def.'s MJAR") (ECF 40); Pl.'s Resp. to Def's Cross-Mot. & Reply ("Pl.'s R&R") (ECF 42); Def.'s Reply (ECF 43); Pl.'s Notice of Suppl. Auth. (ECF 48); Tr. of Oral Arg. ("Tr.") (ECF 50).

The solicitation provided for review of proposals in two phases, based on four evaluation factors. In Phase I, the Agency would review "Factor 1: Technical Experience." AR 306. That factor required offerors to describe their competence in the "capability areas" of "Cyber Infrastructure," "Software Engineering," "Cyber Security," and "Data Management and Analytics." AR 306–07. Based on the Phase I review, the Agency would advise offerors whether it recommended that they proceed to Phase II. AR 304.[2]

In Phase II, offerors were directed to submit information responsive to "Factor 2: Management," "Factor 3: Staffing," and "Factor 4: Price." AR 308, 311–12. Factor 2 and Factor 3, as amended, consisted primarily of sets of prompts calling for responses. AR 309–10. Although the parties have not pointed to a formal rubric for how the Agency rated Factor 2 and Factor 3, the Agency appears to have reviewed the submissions for a combination of "sufficiency" (*i.e.*, "insufficient," "minimally sufficient," and so forth) and performance risk (*i.e.*, "low confidence," "moderate confidence," and "high confidence"). *See* AR 5110–21. The Agency planned to make award decisions based on a "best value trade-off methodology." AR 311. Factor 1 would be considered more important than Factor 2 and Factor 3. AR 311–12. Factor 1, Factor 2, and Factor 3 combined would be considered significantly more important than price. *Id.*

## II. <u>Evaluation of Plaintiff's Proposal</u>

The Agency reviewed Plaintiff's Phase I proposal, rated it "Low Confidence," and recommended that Plaintiff proceed to Phase II. AR 3889, 5048, 5109. This case concerns Plaintiff's response to two of the Phase II prompts. *See* Am. Compl. at 9, 14.

### A. **Factor 2: Management**

Factor 2, prompt 2 read as follows:

> Describe how your company evolved an IT organization's management and process methodologies to meet the increasing demands of productivity and delivery times amid flat or shrinking resources. Provide an example of your company's experience driving organizational change, including the approach used and the outcomes achieved, as well as the key roles instrumental in your company's approach.

AR 309.

Plaintiff interpreted the first and second sentences of the prompt as calling for two separate responses: one addressing how it "evolved an IT organization's

---

[2] Those recommendations were advisory only; offerors could proceed to Phase II even if the Agency recommended against it. AR 304.

management and process methodologies," and one about its "experience driving organizational change." *See* Pl.'s R&R at 5.

Plaintiff accordingly used those two sentences as the headings for separate subsections of its response — 3.2. and 3.2.1. AR 4051–52. In subsection 3.2., Plaintiff described how it used "[. . .]" at the [. . .] to achieve a reduction in IT service tickets. AR 4051. It explained how it used artificial intelligence at the [. . .] to improve cybersecurity. *Id.* And it stated that it supported [. . .] through "[. . .]" at the [. . .]. *Id.* In subsection 3.2.1., Plaintiff described its work modernizing IT for the [. . .]. AR 4052.

The Agency, in its consensus technical evaluation, found the response to prompt 2 "insufficient." AR 4889. The Agency found it "unclear" whether the [. . .] project involved "an evolution of the organization's management and process methodologies." *Id.* In the Agency's view, the project appeared to be "a technology implementation" rather than the "evolution" the prompt called for. AR 4890. The [. . .] project, again, was described in Plaintiff's subsection 3.2.1., while the prompt's sentence calling for discussion of "evolv[ing] an IT organization's management and process methodologies" appeared in the heading of Plaintiff's subsection 3.2. AR 4051–52.

The Agency did not mention the [. . .], [. . .], or [. . .] projects mentioned in Plaintiff's subsection 3.2. *Compare* AR 4889–90 *with* AR 4051. The Agency also said, however, that Plaintiff's response "lacks details to demonstrate" how the [. . .] project "achieved organizational change." AR 4890

Plaintiff's other answers to Factor 2 prompts were rated "sufficient" and "minimally sufficient." AR 4888–90, 5114.

## B. Factor 3: Staffing

Factor 3, prompt 3 read as follows:

> Quoters shall describe potential challenges with staffing work under these capability areas based on its understanding of the job market and outline corresponding mitigation strategies to help ensure successful staffing.

AR 310.

In response, Plaintiff identified two challenges: "[. . .]" and "[. . .]." AR 4061. Plaintiff proposed addressing those challenges by [. . .], as well as through [. . .] strategies. *Id.*

The Agency found that response "insufficient" as well. AR 4892. The Agency stated that the "two challenges … are not related to the Capability Areas" described in the solicitation, are not "specific to IT," and "do not represent a mature

- 4 -

understanding of the job market." *Id.* The Agency also found that Plaintiff's "corresponding mitigations are similarly high level and generic and are not related to the Capability Areas." *Id.* "The challenges and mitigations described by [Plaintiff]," the Agency concluded, "are not applicable to work being performed on behalf of" the Agency. *Id.*

Two of Plaintiff's other responses to Factor 3 prompts were rated "sufficient," and "minimally sufficient," and a third was rated "high confidence." AR 4891–93, 5114.

### C. Overall Decision

In addition to the "low confidence" rating for Factor 1, the Agency gave Plaintiff a "low confidence" rating for Factor 2 and Factor 3. AR 5114, 5120. The Agency's Source Selection Decision justified the Factor 2 and Factor 3 ratings based primarily on the "insufficient" ratings for answers to the prompts described above:

> Team 22nd was considered low confidence for Factor 2 (Management), because they did not clearly describe supporting organizational change management amid flat or shrinking resources. In addition, their response to Factor 3 (Staffing), was low confidence, because they did not clearly describe challenges and mitigations for staffing the [blanket purchase agreement].

AR 5120.

The Agency compared Plaintiff with several different offerors, AR 5134–36, 5142–45, 5147–49, 5155–57, 5162–63, 5167–69, 5173–75, and ranked Plaintiff in ninth place. AR 5119–20. The Agency awarded blanket purchase agreements to the top seven offerors. AR 5119.

<div align="center">

**DISCUSSION**

</div>

## I. <u>Legal Standards</u>

### A. Jurisdiction and Standing

To reach the merits of the case, I must first determine that the Court has jurisdiction over Plaintiff's claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). This Court's jurisdiction in post-award bid protests is derived from the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, § 12(a)–(b), 110 Stat. 3870, 3874–75 (1996) (codified at 28 U.S.C. § 1491(b)). *See Dyonyx, L.P. v. United States*, 83 Fed. Cl. 460, 464–65 (2008). The Tucker Act now grants this Court "jurisdiction to render judgment on an action by an interested party objecting to ... the award of a contract or any alleged violation of statute or regulation in connection with a procurement[.]" 28 U.S.C. § 1491(b)(1). This

Court is empowered under the statute to "award any relief that the court considers proper, including declaratory and injunctive relief[.]" 28 U.S.C. § 1491(b)(2).

Plaintiff must also have standing to challenge the contract award. Plaintiff has Article III standing because it claims an injury — specifically, denial of a blanket purchase agreement award — which is traceable to the allegedly defective procurement process and which could be redressed by this Court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) ("The Court of Federal Claims, though an Article I court, ... applies the same standing requirements enforced by other federal courts created under Article III.").

To establish that it has statutory standing as an interested party, *see* 28 U.S.C. § 1491(b)(1); *CACI, Inc.-Fed. v. United States*, 67 F.4th 1145, 1151 (Fed. Cir. 2023), a plaintiff must show (1) that it "is an actual or prospective bidder" and (2) that it "possesses the requisite direct economic interest." *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006) (citing *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369–70 (Fed. Cir. 2002) (itself citing *Lujan*, 504 U.S. at 561)). Here, there is no dispute that Plaintiff meets the two-part test. First, Plaintiff was an actual bidder who submitted a proposal. *See* AR 362–428, 4036–63, 5080. Second, Plaintiff has the requisite economic interest. It was one of the offerors recommended for Phase II, AR 3889, 5109, and — as discussed further below — it has "a substantial chance of being awarded the contract" if its claims lead the Agency to reconsider its evaluation. *McVey Co., Inc. v. United States*, 111 Fed. Cl. 387, 405 (2013); *see also Weeks Marine*, 575 F.3d at 1359 (quoting *Rex Serv. Corp.*, 448 F.3d at 1308).

## B. Standard of Review

This Court reviews bid protests "pursuant to the standards set forth in section 706 of title 5," *i.e.*, the Administrative Procedure Act. 28 U.S.C. § 1491(b)(4); *see Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004).[3] The protester must show that the agency's action was arbitrary and capricious and that it was prejudiced by the agency's conduct. *Id.* at 1350–51; 5 U.S.C. § 706; *see Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005); *Weeks Marine*, 575 F.3d at 1358–59.

---

[3] The Agency notes that the solicitation followed the procedures of FAR Subpart 8.4. Def.'s MJAR at 12; AR 50, 302. Those procedures are less formal in some respects than negotiation procurements under FAR 15. *Allied Tech. Grp., Inc. v. United States*, 94 Fed. Cl. 16, 44 (2010), *aff'd*, 649 F.3d 1320 (Fed. Cir. 2011). For example, the requirements for agency discussions with offerors are simpler. *Id.* But the Agency does not contend that the underlying review for arbitrary and capricious action is substantively different. *See* Def.'s MJAR at 11; Tr. at 29–30.

There are two bases for setting aside government procurements as arbitrary and capricious: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001); *Weeks Marine*, 575 F.3d at 1358 (quoting *PGBA, LLC v. United States*, 389 F.3d 1219, 1225 n.4 (Fed. Cir. 2004)); *see also Bannum*, 404 F.3d at 1351; *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057–58 (Fed. Cir. 2000). The first route involves determining "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Impresa*, 238 F.3d at 1332–33 (quotes omitted) (quoting *Latecoere Int'l, Inc. v. United States Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994)). To succeed, "the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Id.* at 1333 (quotes omitted) (quoting *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 456 (D.C. Cir. 1994) (itself quoting *Kentron Haw., Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C. Cir. 1973))). The second route requires the disappointed bidder to "show a clear and prejudicial violation of applicable statutes or regulations." *Id.* (quotes omitted) (quoting *Kentron*, 480 F.2d at 1169, and *Latecoere*, 19 F.3d at 1356). In either case, this Court's review is "highly deferential" to agency decision-making, *Advanced Data Concepts*, 216 F.3d at 1058 — especially in an award based on best value, where "the contracting officer ha[s] even greater discretion than if the contract were to have been awarded on the basis of cost alone." *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004); *see also Cleveland Assets, LLC v. United States*, 883 F.3d 1378, 1382 (Fed. Cir. 2018).

"Further, in addition to identifying 'a significant error in the procurement process,' a protestor must show 'that the error prejudiced it.'" *Wis. Physicians Serv. Ins. Corp. v. United States*, 151 Fed. Cl. 22, 32 (2020) (quoting *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996)). Prejudice cannot be presumed. *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 998 (Fed. Cir. 2021). "[T]o establish prejudice, a protester must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protester would have been awarded the contract." *Data Gen. Corp.*, 78 F.3d at 1562.

When resolving motions for judgment on the administrative record under Rule 52.1(c), this Court proceeds "as if it were conducting a trial on the record." *Bannum*, 404 F.3d at 1354 (addressing former RCFC 56.1); *see also Young v. United States*, 497 F. App'x 53, 58–59 (Fed. Cir. 2012) (addressing the standard under RCFC 52.1 and citing *Bannum*, 404 F.3d at 1356).

## II. <u>Merits</u>

The facts of this bid protest are unusually simple. I conclude that the Agency failed to conduct a rational review of Plaintiff's proposal, and that the error prejudiced Plaintiff.

### A. Evaluation Errors

The first error was in Factor 2: Management. The Agency considered Plaintiff's proposal insufficient because it concluded Plaintiff had failed to address part of Factor 2, prompt 2: namely, the sentence asking "how [Plaintiff] evolved an IT organization's management and process methodologies[.]" AR 4889–90. But Plaintiff's proposal did include a response to that part of the prompt, in its subparagraph 3.2. AR 4051. The Agency's failure to consider that response renders its review of the proposal arbitrary and capricious. *See Air Borealis Ltd. P'ship v. United States*, 167 Fed. Cl. 370, 385 (2023) ("When the government misinterprets a proposal, its decision may be arbitrary or capricious.").

The omission cannot reasonably be ascribed to the Agency's technical judgment on Plaintiff's proposal, for there is no question that Plaintiff intended subparagraph 3.2. to address the subjects the Agency believed were missing. Most obviously, Plaintiff used the relevant language as the heading for that part of its proposal. AR 4051. The government conceded at argument that the Agency was obligated to consider both parts of Plaintiff's discussion. Tr. 32–33. But the government also conceded that there is no evidence that the Agency did so. *Id*. The Agency did not even mention the examples Plaintiff provided in subparagraph 3.2. *See* AR 5114, 5120. Instead, it focused solely on the example mentioned in subparagraph 3.2.1. AR 4889–90. Although that subparagraph's heading mentioned only the second part of the Factor 2, prompt 2 — concerning Plaintiff's "experience driving organizational change," AR 4052 — the Agency looked to that section for Plaintiff's response on the first sentence as well, AR 4889–90. The Agency appears simply to have missed the relevant discussion.

At best, the Agency contends that it "fully considered" Plaintiff's proposal, Def.'s Reply at 2–3, but simply read the two sections in an "integrated" way. *See* Tr. at 32–33. Even if that is true, there is no evidence of it, *id.*, so the argument assumes that the Agency's reasons for rejecting parts of the proposal are undocumented. And that is just another form of error: "Where the agency fails ... to document [its] review, we must conclude that it acted irrationally." *Starry Assocs., Inc v. United States*, 127 Fed. Cl. 539, 550 (2016); *see also Advanced Data Concepts*, 216 F.3d at 1058 (explaining that an agency action should be sustained when it demonstrates "consideration of relevant factors") (citing *Bowman Transp., Inc. v. Ark.-Best Freight*

*Sys., Inc.*, 419 U.S. 281, 285 (1974)); *DigiFlight, Inc. v. United States*, 165 Fed. Cl. 588, 607 (2023) (explaining that even FAR Subpart 8.4's streamlined documentation requires the agency to provide enough documentation of the "reasoned basis for the agency's decision" to permit "effective judicial review under the Tucker Act, applying the APA standard[.]").

The Agency may not have anticipated that Plaintiff would bifurcate its response to the two sentences of Factor 2, prompt 2. But Plaintiff was not alone in considering the sentences separate, at least to some extent. [. . .] used the prompt as the heading for its subsection 3.2., then used the prompt's two sentences as subheadings for paragraphs describing what appear to be different sets of projects. AR 4653–54. [. . .] used the first sentence of the prompt as a heading for subsection 3.2., and the second sentence for subsection 3.2.1., with additional discussion of "organizational change" in subsection 3.2.2. AR 4808–11. The [. . .] and [. . .] proposals are not exactly like Plaintiff's, of course, and the Agency has discretion to evaluate their relative technical merits. *See Air Borealis*, 167 Fed. Cl. at 382; *One Largo Metro, LLC v. United States*, 109 Fed. Cl. 39, 97 (2013). But both [. . .] and [. . .] received awards, AR 5119, 5473, 5532, so the organization of Plaintiff's response could not have been either surprising or impermissible.[4]

To be clear, the Agency was not obligated to "search through [Plaintiff's] entire proposal to find responsive information that should have been located elsewhere[.]" *Barbaricum LLC v. United States*, 172 Fed. Cl. 186, 199–200 (2024). Nor was it obligated to spell out its response to every point in the proposal. *See Integrated Fin. & Acct. Sols., LLC v. United States*, 161 Fed. Cl. 475, 495–96 (2022) (citing *22nd Century Techs., Inc. v. United States*, No. 21-1137, 2021 WL 3856038, at *10 (Fed. Cl. July 21, 2021)). Yet the Agency *was* obligated to give Plaintiff's proposal a fair reading and a reasoned response. *See IBM Corp. v. United States*, 119 Fed. Cl. 145, 157 (2014) ("[T]he Court should read the proposal as a whole in order to discern the meaning of any individual parts."); *DigiFlight*, 165 Fed. Cl. at 607. A fair review of the proposal — with two numerically connected sections, on consecutive pages, using the two sentences of the prompt as headings — should have made it reasonably clear to the reviewers what Plaintiff intended. Disregarding half of Plaintiff's response without explanation fell short of the fair reading to which Plaintiff was entitled.

---

[4] To the extent there was any ambiguity as to whether the solicitation permitted offerors to treat the two sentences of the prompt as separate questions calling for separate answers, it was a latent ambiguity that must be construed in the offeror's favor. *Valley Realty Co. v. United States*, 96 Fed. Cl. 16, 31 (2010) ("If ... the ambiguity is latent or not obvious, the general rule of *contra proferentem* controls.") (citing *HPI/GSA 3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004)).

The second error was in Factor 3: Staffing. The Agency found the proposal insufficient because it did not consider [. . .] and [. . .] related to staffing for the Capability Areas of the solicitation, the IT job market, or the Agency's work. AR 4892. In the abstract, that decision is hard to challenge. An agency has wide discretion to evaluate the technical adequacy of proposals. *Barbaricum*, 172 Fed. Cl. at 197 (citing *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996)). Subject-matter experts reviewing proposals are best situated to determine whether a particular offeror has evinced sufficient familiarity with the relevant field. *See id.*

The problem for the Agency here, though, is that other offerors described staffing challenges in similar terms, and the Agency did not raise similar objections. [. . .]'s offer mentioned three staffing challenges, including [. . .] and [. . .]. AR 4521. The Agency considered those challenges responsive to the prompt. AR 4941, 5111. Customer Value Partners' offer similarly pointed to a [. . .], AR 4268, and received credit from the Agency too. AR 4931, 5115. If those challenges were responsive, it is hard to imagine why Plaintiff's references to a "[. . .]" and "[. . .]" would not have been, AR 4061, much less why the Agency could have dismissed the relevance of Plaintiff's proposal in such emphatic language. AR 4892. The Agency has not explained why it considered the same staffing challenges relevant in some proposals but not in Plaintiff's.

The government characterizes this issue as a claim of disparate evaluation by the Agency, which it argues that Plaintiff forfeited by raising in its Response & Reply rather than its opening brief. Def.'s Reply at 7. Whatever the best characterization might be, Plaintiff was clear all along in arguing that its response to Factor 3, prompt 3 should have been considered adequate. Pl.'s MJAR at 10–13. The reference to the other offerors was simply additional argumentation in support of the basic claim. *See Onesimus Def. LLC v. United States*, 173 Fed. Cl. 344, 354–55 (2024); *Tech. Innovation All. LLC v. United States*, 149 Fed. Cl. 105, 131 (2020); *see also* Tr. at 21–22. Although Plaintiff should ideally have presented that specific point in its opening brief, raising it in the response brief at least allowed the government an opportunity to respond. This Court has not found a forfeiture even in much more severe circumstances. *Am. Corr. Healthcare, Inc. v. United States*, 137 Fed. Cl. 395, 420–21 (2018) (addressing a claim for injunctive relief presented for the first time in a response and reply) (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 n.9 (Fed. Cir. 2006), and *Ironclad/EEI v. United States*, 78 Fed. Cl. 351, 358 (2007)).

The government also argues that the Agency reviewers objected primarily to Plaintiff's plans to mitigate staffing challenges — *i.e.*, [. . .] — as too generic to be helpful. Def.'s MJAR at 20–21. The problem with that response is that it contradicts

the words the Agency used. The Agency explicitly distinguished its criticisms of Plaintiff's staffing challenges and mitigations. AR 4892 (stating that the "challenges" were "not related to the Capability Areas" and the "mitigations" were "high level and generic"). The potential shortcomings of Plaintiff's plans are thus separate, in the Agency's own view, from the Agency's diagnosis of the problem. *See id.* Even if the Agency could permissibly have considered the mitigations too generic, *see Air Borealis*, 167 Fed. Cl. at 382, it should have started from a reasonable, non-arbitrary position on the challenges themselves.

To be clear, I do not hold that the Agency should have given Plaintiff a higher rating for either prompt, let alone for Factor 2 or Factor 3 as a whole. I do conclude, though, that the Agency did not give those prompts the fair, rational review that was required.

### B. Prejudice

The Agency's errors prejudiced Plaintiff, at least within the meaning this Court has applied to the term in bid protests.[5] The solicitation, recall, contemplated approximately four to eight blanket purchase agreements, and the Agency awarded seven. Plaintiff was ranked ninth. AR 311, 5119–20. The most straightforward way for Plaintiff to demonstrate prejudice is to show how re-evaluation of its proposal in light of the errors noted above might put it in the top eight offerors, where it could be considered again for an award. *See Accura Eng'g & Consulting Servs., Inc. v. United States*, 167 Fed. Cl. 258, 272 (2023); *Harmonia Holdings Grp., LLC v. United States*, 167 Fed. Cl. 448, 461, 475 (2023); *Allicent Tech., LLC v. United States*, 166 Fed. Cl. 77, 108 (2023), *as amended* (July 18, 2023), *reconsideration denied*, No. 22-1380C, 2023 WL 4287196 (Fed. Cl. June 30, 2023); *Serco Inc. v. United States*, 81 Fed. Cl. 463, 501 (2008) (explaining that the fundamental question in this type of solicitation is whether the "protester had a substantial chance of receiving a contract award in addition to the other awardees," not "instead of" a current awardee) (emphasis omitted); *see also CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1574–75 (Fed. Cir. 1983) (discussing prejudice to offerors "within the zone of active consideration"). Two different approaches show how reconsideration might do just that.

First, compare Plaintiff's evaluations with those of the eighth-ranked offeror, [. . .]. AR 5120. Both Plaintiff and [. . .] were rated "low confidence" for Factor 1, Factor 2, and Factor 3. *Id.* But the ratings for the Factor 2 and Factor 3 prompts were

---

[5] Determination of prejudice on the merits "employs the same standards as the prejudice determination for purposes of standing[.] The difference between the two is that the prejudice determination for purposes of standing assumes all non-frivolous allegations to be true, whereas the post-merits prejudice determination is based only on those allegations which have been proven true." *L-3 Commc'ns Corp. v. United States*, 99 Fed. Cl. 283, 289 (2011).

different. [. . .]'s responses were "minimally sufficient" for three Factor 2 prompts, *see* AR 4947–50, 5115, while Plaintiff had one "sufficient," one "minimally sufficient," and one (potentially erroneous) "insufficient." AR 4888–90, 5114. An improvement in Plaintiff's "insufficient" rating after reconsideration could potentially make Plaintiff's Factor 2 evaluation superior to [. . .]'s.

Similarly, for Factor 3's prompts, both Plaintiff and [. . .] received one "sufficient," one "minimally sufficient," one "insufficient," and one "high confidence" rating. AR 4891–93, 4951–53, 5114, 5116. Improvement of Plaintiff's "insufficient" rating on reconsideration could place Plaintiff ahead of [. . .] on Factor 3 as well.

Then turn to pricing. Plaintiff quoted just under $[. . .] million. AR 5123. [. . .] quoted a price of approximately $[. . .] million. *Id.* The current seventh-ranked offeror, Accenture — the lowest-ranked offer to receive a blanket purchase agreement — quoted $794 million. AR 5120, 5123. It therefore seems at least plausible that an improvement in Plaintiff's Factor 2 and Factor 3 ratings, combined with Plaintiff's price advantages, could make Plaintiff's proposal appear more attractive than [. . .]'s and more economical than Accenture's. In that situation, Plaintiff may have a substantial chance of an award. *Samsara Inc. v. United States*, 169 Fed. Cl. 311, 330–31 (2024).

Second — besides the comparison between Plaintiff and [. . .] — Plaintiff suggests a comparison to ECS, the current fifth-ranked offeror. Pl.'s MJAR at 4 n.4; *see* AR 5119. ECS was rated "some confidence" for Factor 1, and "low confidence" for Factor 2 and Factor 3. AR 5059–60. Plaintiff was rated "low confidence" for all three factors — with errors potentially infecting Factor 2 and Factor 3. AR 5060. The solicitation described Factor 1 as more important than Factor 2 and Factor 3, and the three substantive factors as significantly more important than price. AR 312. But ECS's quoted price was approximately $742 million — over $[. . .] million more than Plaintiff's. AR 5123. It is plausible that improvement in Plaintiff's Factor 2 and Factor 3 evaluations, combined with the price advantage, could lead the Agency to consider Plaintiff's proposal comparable to ECS's, at least for the price. That could give Plaintiff a substantial chance of an award as well. *See Samsara*, 169 Fed. Cl. at 330–31.

The government's main response is that Plaintiff's low rating for Factor 1: Technical Experience justified the Agency's overall review of Plaintiff's proposal as compared with other proposals. Def.'s MJAR at 21–23. The government points out that Factor 1 was most important, AR 312, and that the Agency may have expected an especially compelling Phase II response from Plaintiff before making an award. Def.'s MJAR at 22. But two proposals rated "low confidence" at Phase I received

awards, AR 5119–20 — specifically, NTT and Accenture — so that rating is hardly the disqualification that the government suggests. It depends, rather, on the strength of an offeror's Factor 2 and Factor 3 proposals (both of which were erroneously evaluated in Plaintiff's case) and on price.

More fundamentally, the government's argument ignores the standard of review. The point of reviewing contracting decisions for arbitrary and capricious agency action is to keep judicial decisions from displacing the technical judgment of experts tasked with administrative responsibility. *Harmonia Holdings Grp., LLC v. United States*, 999 F.3d 1397, 1408 (Fed. Cir. 2021); *Squire Sols., Inc. v. United States*, 156 Fed. Cl. 249, 267–68 (2021); *see also, e.g.*, *Barbaricum*, 172 Fed. Cl. at 197. For that reason, even when this Court sets aside an agency action, it generally cannot determine what rating the agency should have applied. *Tesla Lab'ys, Inc. v. United States*, 172 Fed. Cl. 505, 529, 531, 536 (2024). As a result, instead of directing what ratings to apply and what contracts to award, this Court ordinarily must remand for further agency action. *See id.* at 536; *see also IAP Worldwide Servs., Inc. v. United States*, 160 Fed. Cl. 57, 82 (2022) (explaining that when an agency retains some discretion, a remand is the preferred remedy) (citing *Huff v. Vilsack*, 195 F. Supp. 3d 343, 362 (D.D.C. 2016)).

The Court's lack of authority to impose its own technical analysis on remand is a double-edged sword for agencies: It implies that this Court cannot predict the ratings an agency might apply after a fair review. *See Fluor Intercontinental, Inc. v. United States*, 147 Fed. Cl. 309, 338 (2020). The government's prejudice argument — which depends on piling up hypotheticals about future technical judgments and comparisons between offerors — thus asks this Court to preempt decisions committed to the Agency. Just as this Court cannot raise a technical rating based on a plaintiff's argument, *see, e.g.*, *Patriot Taxiway Indus., Inc. v. United States*, 98 Fed. Cl. 575, 585–86 (2011) (explaining that to the extent plaintiff argued for higher ratings, plaintiff was "asking the Court to step into the shoes of the [] evaluators," and that this "Court does not sit as a super source selection authority to second guess and re-score offerors' proposals."), it cannot prospectively presume an unfavorable rating based on the government's argument. *See CACI*, 67 F.4th at 1154 (explaining that "a declaration from a contracting officer as to how she would resolve the case is no substitute for a remand where the challenging party would have a full opportunity to present the case to the contracting officer").

Once again, I do not hold that the Agency *must* upgrade the rating or ranking of Plaintiff's proposal, or that it must compare Plaintiff's proposal to other proposals more favorably. Rather, given the prejudice standard, the record shows that if

Plaintiff's proposal were re-evaluated under the correct standard, there is a substantial chance that Plaintiff could receive an award.

## C. Remedy

The proper remedy, at the outset, is a remand to the Agency for reconsideration of Plaintiff's proposal. The Agency may choose whether to re-evaluate Plaintiff's offer, cancel or restart the procurement, or take other action consistent with this Opinion. *Accura*, 167 Fed. Cl. at 276.

Plaintiff has requested that remand be accompanied by an injunction prohibiting the Agency from competing or awarding task orders among current blanket purchase agreement awardees based on the current award decision. Pl.'s MJAR at 17–20. The government objects. Def.'s MJAR at 24–26. The following test applies:

> Once a plaintiff has succeeded on the merits, in determining whether to grant a permanent injunction, the court considers three factors: (1) whether the plaintiff will suffer irreparable harm if the procurement is not enjoined; (2) whether the harm suffered by the plaintiff, if the procurement action is not enjoined, will outweigh the harm to the government and third parties; and (3) whether granting injunctive relief serves (or is at least not contrary to) the public interest.

*Fed. Acquisition Servs. Team, LLC v. United States*, 124 Fed. Cl. 690, 707–08 (2016) (citing *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009), *PGBA, LLC*, 389 F.3d at 1228–29, and *Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 383 (2013)). I conclude that an injunction is warranted.

First, it is well established that loss of an opportunity to compete fairly for a contract constitutes irreparable harm. *T Square Logistics Servs. Corp. v. United States*, 134 Fed. Cl. 550, 560 (2017) ("[P]laintiff has shown that absent injunctive relief, it will suffer irreparable harm in the form of a lost opportunity to compete for the award at issue."); *RLB Contracting, Inc. v. United States*, 118 Fed. Cl. 750, 761 (2014) ("[I]n the context of a bid protest, the loss of an opportunity to compete for an award for which a party would not otherwise be disqualified is sufficient injury to warrant injunctive relief."); *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 664 (2003) ("[A] lost opportunity to compete may constitute an irreparable harm[.]"). That logic extends to procurements where, as here, the award consists of an opportunity to compete for task orders. *Allicent Tech., LLC*, 166 Fed. Cl. at 186; *Sirius Fed., LLC v. United States*, 153 Fed. Cl. 410, 428 (2021).

Second, the balance of harms favors Plaintiff. The Agency claims that an injunction "may interrupt [its] critical scientific work, where long-term partnerships

with IT providers are critical to cybersecurity and stability." Def.'s MJAR at 26. The Agency has brought no evidence to substantiate that concern. That leaves little basis to find that the government will be harmed.

But even assuming that some disruption is possible, only in an "exceptional case" do contracting delays alone justify denial of injunctive relief. *CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 495 (2013) (quoting *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 715 (2006) (itself quoting *Ellsworth Assocs., Inc. v. United States*, 45 Fed. Cl. 388, 399 (1999))). The Agency's IT needs are certainly legitimate, but it must satisfy them through permissible channels. *Accura*, 167 Fed. Cl. at 275 ("Whatever the government's ultimate goals in a procurement — as in any other regulatory process — the government has to follow the applicable law on the way there."). In any event, the harm to the Agency of having to reconsider a procurement in a fair and rational way does not outweigh the harm to an individual organization that was denied its right to fair consideration. *See id.* at 275–76 (citing *T Square*, 134 Fed. Cl. at 560). I therefore conclude that the balance of harms favors injunctive relief.

Third, "the public interest always favors the correct application of law." *Id.* at 276 (alteration omitted) (quoting *RLB Contracting*, 118 Fed. Cl. at 761). That leaves it hard to imagine any circumstance where it is in the public interest for an agency to act arbitrarily or capriciously. "[W]here, as here, defendant erred, it is both proper and in the public interest[] for the court to step in and protect the integrity of the procurement process." *T Square*, 134 Fed. Cl. at 561.

Because the Agency should have the opportunity to reconsider its decisions on remand, I do not enjoin it to take any particular action related to Plaintiff. Rather, the Court shall enjoin the Agency not to compete or award task orders under the current award decisions until it complies with the terms of the remand, as further explained below.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Administrative Record (ECF 39) is **GRANTED** and the government's Cross-Motion for Judgment on the Administrative Record (ECF 40) is **DENIED**.

Pursuant to RCFC 52.2, the case is **REMANDED** for 60 days to the Agency for further proceedings. The Agency is **ORDERED** to proceed with the procurement consistent with this Opinion. The Agency may re-evaluate Plaintiff's offer, cancel the procurement, start the procurement process over again, or take other action consistent with this Opinion.

It is further **ORDERED** that no later than **May 9, 2025**, the parties shall file either a stipulation of dismissal or a joint status report including the Agency's decisions on remand.

It is further **ORDERED** that if no stipulation of dismissal is filed, the parties shall file a joint status report no later than **June 9, 2025**, proposing further proceedings in this case.

This case shall be **STAYED** pending the Agency's decision.

The Agency is **ENJOINED** from competing or awarding task orders among current awardees until further order of the Court or a joint stipulation of dismissal is filed, whichever comes first.

Pursuant to the Court's August 21, 2024, Protective Order (ECF 10), this Opinion has been issued under seal. The transcript of oral argument is under seal as well. The parties shall have two weeks to propose redactions and, accordingly, are **ORDERED** to file notice of their proposed redactions no later than **April 9, 2025**. To aid the Court's evaluation of the proposed redactions and in light of the "presumption of public access to judicial records," *Baystate Techs., Inc. v. Bowers*, 283 F. App'x 808, 810 (Fed. Cir. 2008) (per curiam), each party shall file a memorandum explaining why redactions are necessary for each item of information for which a redaction is proposed.

The parties have not complied with their obligation to file redacted versions of their own filings. *See* Protective Order ¶ 12. The parties are **ORDERED** to file the required redacted versions by **April 9, 2025**.

The Clerk of Court is directed to serve a certified copy of this opinion on the Agency in the care of Shelita Saint-Louis, Contracting Officer, Acquisition Services Directorate, Interior Business Center, Department of the Interior, 1849 C Street, N.W., Washington, DC 20240. *See* RCFC 52.2(b)(2).

**IT IS SO ORDERED**.

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge